IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAVID ANDREW PARKER,
    Plaintiff,

vs.                                Case No. 5:09cv189/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

# REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

I.    PROCEDURAL HISTORY

This suit involves Plaintiff's applications for DIB and SSI, both of which were denied initially and on reconsideration. On June 28, 2007, following a hearing, an administrative law judge ("ALJ") rendered a decision in which he found that Plaintiff was not under a "disability" as defined in the Act at any time during his alleged disability period. On March 23, 2009, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, now subject to review in this court.

Ingram v. Comm'r. of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed and is now before the court for consideration.

Also before the court are Plaintiff's "Motion to Stay Proceedings or Remand Pursuant to Sentence Six," Defendant's response in opposition thereto, Plaintiff's reply to Defendant's response, and Defendant's sur-reply (Docs. 21, 23, 25, 26), all of which were filed after the parties submitted memoranda in support of their respective positions in the underlying appeal. In short, in the motion to stay or remand Plaintiff asserts that this action should be stayed because the administrative record (Doc. 10) contains four pages of medical records from Cory R. Gaiser, D.O., Plaintiff's back surgeon, that do not appear to be Plaintiff's medical records, and a stay would allow the parties time to determine whether the medical records are actually Plaintiff's and whether additional medical records from Dr. Gaiser are missing from the record (*see* Doc. 21). Alternatively, Plaintiff asserts that remand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate for further administrative action to "remedy the administrative record" (*id.*). In opposing Plaintiff's motion, the Commissioner notes that it is evident that the questioned medical records (i.e., Tr. 201–04)[1] are not Plaintiff's records, a corrected administrative record has been filed that excludes those records (Doc. 17), and remand pursuant to sentence six is not warranted under either circumstance provided in § 405(g) (Doc. 23). In his reply to Defendant's response, Plaintiff states there is new, non-cumulative evidence warranting a remand, and he has attached to the reply additional medical records from Dr. Gaiser (obtained by Plaintiff after filing the initial motion to stay or remand), most of which records concern Dr. Gaiser's treatment of Plaintiff during the time frame relevant to this appeal (*see* Doc. 25 & Attachs.). Plaintiff asserts that good cause exists for his failure to earlier obtain the additional records because the Commissioner previously requested all of Dr. Gaiser's records, and Plaintiff had no reason to believe any records were missing, noting that it was not evident that the questioned (and now excluded) medical records were not Plaintiff's because they concerned a male patient seeking social security disability benefits, whose last name is "Parker," and who had back surgery and back problems similar to Plaintiff's (*see* Doc. 25). Further, Plaintiff states he did not realize the

---

[1] Unless otherwise noted, all references to "Tr." refer to the Transcript of the Administrative Record, filed by th Commissioner on August 19, 2009 (Doc. 10).

Case No. 5:09cv189/RS/EMT

questioned records were not his until the Commissioner filed a notice regarding the filing of a modified transcript (Doc. 17), which prompted Plaintiff to contact Dr. Gaiser and resulted in the discovery of additional, relevant, medical records (*see* Doc. 25 & Attachs.). Lastly, in his sur-reply, the Commissioner asserts that remand is not appropriate because Plaintiff has still failed to establish that remand pursuant to sentence six is warranted under either circumstance provided in § 405(g).

Upon review of the record upon which the ALJ's findings were made (i.e., Doc. 10), the undersigned concludes that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed. Further, in light of this conclusion, Plaintiff's motion to stay or remand should be denied as moot.

II.  FINDINGS OF THE ALJ

On June 28, 2007, the ALJ found in relevant part as follows:

1) Plaintiff requested a "closed period" of disability, from January 23, 2004, through December 15, 2006, and although Plaintiff resumed full-time work activity in December 2006, he did not engage in substantial gainful activity during the requested closed period.

2) During the closed period Plaintiff had the following severe impairments: history of L5-S1 disc herniation and L4-5 disc bulge, status-post L4-S1 fusion, status-post lumbar fusion hardware removal surgery, depression, cognitive disorder, learning disorder, alcohol abuse, and marijuana abuse.

3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

4) Plaintiff was unable to perform any of his past relevant work, but considering his age (twenty-seven on the date he alleges he became disabled), high school education, work experience, and residual functional capacity ("RFC"),[2] there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Plaintiff, therefore, was not under a disability, as defined in the Act, during the closed period.

---

[2] The ALJ determined the following RFC: Plaintiff could lift and carry up to twenty pounds occasionally or ten pounds frequently, and he could sit, stand, or walk about six hours each in an eight-hour workday, as long as he had the option to alternate between sitting and standing at will; he could not perform more than occasional climbing of stairs and ramps, stooping, bending from the waist to the floor, crouching, or crawling; he could not perform any climbing of ladders, ropes, or scaffolds; and he could not have more than infrequent contact with the general public and co-workers.

Case No. 5:09cv189/RS/EMT

III.      STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S MEDICAL HISTORY[4]

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereafter, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

[4] As this case is due to be remanded based on matters related to Plaintiff's physical condition, his psychological and substance abuse disorders are not addressed in this Report. Moreover, it is noted that the information in this section is taken from references to the record made both by Plaintiff and the Commissioner in their memoranda.

On January 28, 2004, Plaintiff presented to A.R. Salman, M.D., with complaints of lower back pain and shooting pain in his leg (Tr. 295). Plaintiff was diagnosed with back pain (*id.*). On February 3, 2004, Plaintiff went to an emergency room ("ER") with complaints of burning, sharp, and radiating back pain, and ER staff diagnosed Plaintiff with acute sciatica (Tr. 370–71).

On February 24, 2004, Plaintiff was referred by Vocational Rehabilitation to Jack B. Shumate, M.D, for an evaluation of his low back pain that radiated into his left leg (Tr. 293). Dr. Shumate noted that "[f]or the last two months [Plaintiff] has had the gradual onset of increased pain in his low back," and further, that "[i]n the last month the pain has been very intense radiating down his left leg and associated with tingling in his left foot" (*id.*). Plaintiff reported that his "pain medicine gives him a little relief but overall no real significant improvement," and Dr. Shumate noted that "[t]he pain seems to be worse when [Plaintiff] is standing or walking"; he also noted that Plaintiff had "good strength" in his arms and legs (*id.*). Plaintiff was diagnosed with lumbar radiculopathy and a "[n]on-healing abscess" (*id.*). A lumbar spine magnetic resonance imaging ("MRI") obtained on March 3, 2004, revealed a "large, left posterior disk extrusion" which "causes deformity of the thecal sac and especially the left L5 nerve root," spondylolisthesis at L5-S1 "due to L5 pars defects," a moderately narrowed (and apparently fractured) left foramen, and moderate degeneration at L4-5 (*see* Tr. 283).

On March 10, 2004, Plaintiff saw Dr. Shumate and reported persistent low back radicular pain into his left leg (Tr. 281). Dr. Shumate reviewed the lumbar spine MRI and recommended physical therapy and a surgical consultation (*id.*). On April 1, 2004, Dr. Shumate noted Plaintiff's reports of constant low back and "total left leg pain," as well as left foot numbness, and he stated that Plaintiff was "weaker in that leg and is off balance although he has taken no falls" (Tr. 308).

On April 5, 2004, Plaintiff was examined by Cory R. Gaiser, D.O., an orthopedic specialist (Tr. 275). Dr. Gaiser noted that x-rays of the lumbar spine revealed spondylolisthesis, spina bifida occulta, and bilateral pars fractures, while an MRI showed a large herniated nucleus pulposus ("HNP") (Tr. 275–76). Dr. Gaiser diagnosed Plaintiff with left leg radiculopathy, spondylolisthesis, HNP, and spina bifida occulta, and he advised Plaintiff to participate in physical therapy (Tr. 276). Plaintiff attended several physical therapy appointments in May 2004, but he complained of

continued pain at his appointment with Dr. Gaiser on June 8, 2004 (Tr. 264, 266–70). Dr. Gaiser recommended surgery, noting that Plaintiff "had [undergone] injections, physical therapy, and multiple treatments for months without significant relief of his symptoms," and Plaintiff agreed with Dr. Gaier's surgery recommendation (Tr. 264).[5]

On July 15, 2004, Plaintiff underwent spinal surgery, performed by Dr. Gaiser, which included a fusion at L4 through S1, bilateral laminotomy with neural foraminotomy at L4-L5, and bilateral central and lateral laminotomy and neural foraminotomy at L5-S1 (Tr. 260). Plaintiff saw Dr. Gaiser for a follow-up appointment on July 23 (Tr. 252). Dr. Gaiser noted that the incision was "healing well," that the hardware was "in good position," and that Plaintiff could walk "without difficulty" (*id.*). On August 23, 2004, Plaintiff reported that he had experienced left leg pain, but it had subsided (Tr. 251). Dr. Gaiser noted that Plaintiff's gait was normal and that Plaintiff should "discontinue his brace except with [e]xtensive activities" (*id.*). On October 4, 2004, Dr. Gaiser opined that Parker was "doing well" postoperatively and "resuming normal activities without difficulty" (Tr. 297). Dr. Gaiser also noted that Plaintiff was "going to return to light duty activity at this time," with a 25-pound lifting restriction and an allowance for sitting and standing "with comfort" (*id.*).[6] Plaintiff was prescribed Celebrex, Skelaxin, and Lortab (*id.*).

On or about December 8, 2004, Plaintiff returned to Dr. Gaiser with complaints of increased pain (Tr. 226). A lumbar spine x-ray was taken, which revealed that "complete resorption of the posterolateral fusion graft has occurred," and that "[n]o evidence of fusion is appreciated, in fact, loosening about the S1 screws is noted with haling on X-rays" (Tr. 225). Plaintiff was scheduled for a second surgical intervention with hardware removal and revision posterolateral fusion with iliac crest bone grafting and bone morphogenic protein (Tr. 226). Moreover, on January 12, 2005, in a report to Vocational Rehabilitation, Dr. Gaiser noted that Plaintiff's surgery was scheduled for February 8, 2005, and he opined that Plaintiff would not be able to return to school or work for approximately three to six months (Tr. 247).

---

[5] On May 9, 2004, Mary Seay, M.D., a non-examining State agency physician, generally opined that Plaintiff had physical capabilities that are consistent with (or greater than) the ALJ's RFC determination (*see* Tr. 357–64, 25).

[6] Similarly, Dr. Gaiser opined on a "Work Prescription" form dated October 4, 2004, that Plaintiff could return to work, but for the next four weeks he should be restricted to "light work (20 lbs.)" with a sit/stand option (Tr. 250).

Case No. 5:09cv189/RS/EMT

On February 8, 2005, Plaintiff underwent a second back surgery (Tr. 242). Dr. Gaiser noted that the surgery was "a revision of fusion" because the fusion at L5-S1 had failed (*id.*). Plaintiff followed up with Dr. Gaiser about ten days after the surgery and reported that he had not experienced "any significant pain" (Tr. 227). A lumbar spine x-ray on the same date showed a properly forming fusion (Tr. 200). On March 21, 2005, Plaintiff returned for follow-up and reported that he had been doing "very well," although he was occasionally in pain (Doc. 25, Attach.).[7] An x-ray revealed "good incorporation of the [] fusion mass," and "no change in position of the listhesis" (*id.*). In April 2005 Plaintiff called Dr. Gaiser's office, reporting that the current dosage of Lortab was "not helping," and he was therefore taking "two at a time" (*id.*). Plaintiff returned for follow-up appointments in late April and June 2005, at which times it was noted that Plaintiff was healing well (*id.*). On June 22, 2005, Dr. Gaiser opined that Plaintiff could "resume normal activities," although Plaintiff had not yet reached maximum medical improvement ("MMI") (*id.*). In mid-January 2006 Plaintiff presented with "[n]o complaints of back pain or tenderness" or radiculopathy, although he had recently undergone flexor tendon repair over his right ring finger and a carpal tunnel release (*id.*). Plaintiff walked with a normal gait and station and could heel-and-toe walk effectively (*id.*). Plaintiff was advised to participate in activities "as tolerated" but to avoid bearing weight (*id.*). With regard to Plaintiff's hand, Dr. Gaiser noted that Plaintiff's sutures were still in place, his hand was "wrapped" in a sling, and he was taking Lortab for pain and in need of physical therapy (*id.*). In late January 2006 it was noted that Plaintiff's hand remained in a splint and that Plaintiff was to continue home exercises and physical therapy and return for follow-up in four weeks (*id.*). Plaintiff returned to Dr. Gaiser in May 2007 (after the time frame relevant to this appeal) with reports of persistent low back pain, and lower extremity pain and weakness upon "[p]ositional changes" (*id.*). MRI studies were obtained, which revealed a solid fusion, and on May 27, 2007, Plaintiff was "released to full activity" by Dr. Gaiser (*id.*).

---

[7] Although this record and the remaining treatment records from Dr. Gaiser are not part of the certified administrative record, as they were supplied by Plaintiff in support of his motion for remand, a summary of the additional records is included here for the sake of completeness. The undersigned notes, however, that the additional records were <u>not</u> considered in determining that the ALJ's decision lacks substantial evidentiary support.

Case No. 5:09cv189/RS/EMT

Lastly, the file reflects that Plaintiff also received treatment from A.R. Salman, M.D., on eight occasions from January 12, 2006, to August 10, 2006, at the Gulf Coast Clinic for back pain and general medical conditions (Tr. 158–63, 167, 171).

V.  DISCUSSION

Plaintiff asserts that the ALJ erred in "not accounting for [Plaintiff's] failed spinal fusion" and by basing his physical RFC determination on "outdated medical information" (Doc. 14 at 11).[8] Specifically, Plaintiff asserts that the ALJ erred "in adopting Dr. Gaiser's October 2004 statement of physical abilities" and the opinions of the state agency physicians as bases for the RFC determination (*id.* at 12).

In determining Plaintiff's physical RFC, the ALJ stated as follows:

> [Plaintiff's] lumbar disc problem was resolved after his July 2004 surgery. His post-operative clinical exams through 2007 revealed no significant neurological or motor deficits. His subsequent lumbar disc surgery was only performed due to remove [sic] loosening hardware, but the fusion was noted to be solid and in good alignment. After the second surgery in December 2004, [Plaintiff] reported having 'no significant back pain.' His subsequent treatment was entirely conservative in the form of pain medications and he required no further physical therapy or steroid injections. None of [Plaintiff's] treating or examining physicians assigned any physical limitations to his ability to function that are more restrictive than the [RFC, as determined by the ALJ]. His treating orthopedic surgeon opined that he could return to light exertion activity in October 2004 so long as he had a sit/stand option. These limitations are accommodated by the [RFC, as determined by the ALJ], as are the postural limitations assigned to [Plaintiff] by the non-examining state agency physicians.

(Tr. 26).

The undersigned concludes that the foregoing statements lack substantial evidentiary support; thus, the ALJ's RFC determination—which is based on those statements—is unsupported by the record. Initially, Plaintiff's lumbar disc herniation was not resolved after the July 2004 fusion surgery because the fusion failed, and Plaintiff was required to undergo a second surgery. Additionally, the ALJ's statements that "Plaintiff was required to undergo a second surgery in December 2004," and only to remove loosening hardware, are erroneous, as the medical record upon

---

[8] Plaintiff also asserts error regarding the ALJ's mental RFC determination, a claim that need not be addressed.

which these statements are based is not Plaintiff's medical record, but that of different patient of Dr. Gaiser's (also with the last name "Parker," who underwent back surgery on December 4, 2004) (*see* Tr. 203–04). The record establishes that Plaintiff's second surgery was in February 2005, not December 2004. Moreover, Plaintiff's second surgery was necessary, not only for removal of loosening hardware, but also for revision of the fusion from L4 to S1 (or, more precisely, "a revision posterolateral fusion with iliac crest bone grafting and bone morphogenic protein" from L4 to S1, along with removal of loosening hardware) (*see* Tr. 248, 242, 226).

Likewise, the ALJ's statement that Plaintiff reported having "no significant back pain" after the second surgery in December 2004 fails to support the RFC as determined by the ALJ. Plaintiff's medical records establish that on December 8, 2004, he complained of increasing back pain, which complaints were substantiated by x-ray testing that revealed Plaintiff's fusion had failed. The Commissioner acknowledges the error but asserts that the ALJ's statement is nevertheless supported by the record because Plaintiff did not report "any significant pain" shortly after his second surgery in February 2005, arguing that "[t]he fact that the ALJ cited the wrong date of Plaintiff's second back surgery is of no consequence" (*see* Doc. 18–19 at n.11; Tr. 227). However, the ALJ did not merely cite a wrong surgery date; rather, he relied on a medical record that did not belong to Plaintiff and in so doing misconstrued the precise nature of Plaintiff's second surgery. Moreover, although the ALJ's statement is accurate to the extent that Plaintiff did not report any significant pain to Dr. Gaiser shortly after his second surgery, the ALJ failed to mention that at the time of Plaintiff's report he was wearing a "TLSO[9] at all times when up," daily wound care was still necessary, and he was taking Lortab for pain (*see* Tr. 227). Thus, despite Plaintiff's report, his condition was obviously fragile and his mobility limited. Furthermore, Dr. Gaiser advised Plaintiff at that time that continued use of Lortab and the TLSO was necessary (apparently for the next four weeks, after which Plaintiff was to return for follow-up) (*see* Tr. 227). Likewise, in an office note dated February 9, 2005, Dr. Gaiser advised that Plaintiff would need Celebrex and Skelaxin, in addition to the Lortab, "for about

---

[9] It is believed that this abbreviation refers to a "thoracolumbosacral orthosis," which is "an external device applied to the trunk and extending from the upper portion of the thoracic spine to the pelvis; designed to provide immobilization of the thoracic spine and thoracolumbar junction." *See* www.medilexicon.com (search for "TLSO") (last visited July 1, 2010).

Case No. 5:09cv189/RS/EMT

3 months to aid in recovery from surgery" (*see* Tr. 246). Thus, Dr. Gaiser expected that Plaintiff's recovery period would continue through May 2005, even though Plaintiff's pain was apparently adequately controlled. Accordingly, while the ALJ's statement regarding Plaintiff's report is generally accurate, the statement does not fully capture the true nature of Plaintiff's condition following the second surgery; nor does it substantially support the RFC as determined by the ALJ.

Additionally, although Dr. Gaiser did release Plaintiff to light duty work in October 2004, as the ALJ noted, the release to light duty work was short-lived, a circumstance the ALJ failed to consider. Indeed, it was evident to Dr. Gaiser by December 8, 2004, that the fusion had failed and that a second surgery was necessary. Moreover, Dr. Gaiser opined that Plaintiff would likely be unable to perform any work or attend school for three to six months following the second surgery (*see* Tr. 247), an opinion that effectively negated the October 2004 opinion relied upon by the ALJ in determining Plaintiff's RFC. Similarly, the ALJ erred in relying on the opinions of the state agency physicians in determining Plaintiff's RFC. As noted *supra,* Dr. Seay's opinions were rendered in May 2004, less than four months after the date Plaintiff alleges he became disabled and prior to either of Plaintiff's back surgeries. Dr. Seay's opinions, therefore, do not reflect Plaintiff's condition during most of the time frame relevant to this appeal, that is, from January 23, 2004, through December 15, 2006. The only other agency physician to offer opinions was David Guttman, M.D., who completed a physical RFC assessment form on March 25, 2005 (*see* Tr. 191–98). However, Dr. Guttman's opinions are based, at least in part, on the medical records of Dr. Gaiser's <u>other</u> patient (*see* Tr. 192 (Dr. Guttman's specific reference to a December 2004 surgery as support for his opinions); Tr. 196 (Dr. Guttman's statement that "claimant's recent surgery in 12/04 appears to be successful and should result in better functioning within a year's time . . . [thus] light restrictions will be given a year from the date of his 12/04 surgery")). Therefore, the ALJ erred in relying on Dr. Gaiser's October 2004 opinions and the opinions of Dr. Seay and Dr. Guttman in determining Plaintiff's RFC.

VI. CONCLUSION

The ALJ's physical RFC determination is not supported by substantial evidence in the record. Thus, the ALJ's conclusions based on the RFC determination—including his ultimate

conclusion that Plaintiff is not disabled because jobs existed in significant numbers during the relevant period that would accommodate Plaintiff's RFC—lack substantial support in the record.

The remaining question concerns the appropriate remedy for the ALJ's error. In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Foote, 67 F.3d at 1562 (stating that an insufficient credibility finding is "a ground for remand when credibility is critical to the outcome of the case") (emphasis added); Salter v. Astrue, Case No. 3:08cv189/RV/EMT (N.D. Fla. May 22, 2009 (Doc. 15)) (same). A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d at 1219 ("The record . . . is fully developed and there is no need to remand for additional evidence."); MacGregor, 786 F.2d at 1053 (where Commissioner does not discredit or make any findings regarding the weight of a treating physician's opinions, the opinions must be accepted as true).

Because the evidence in this case does not point unequivocally to a specific finding of disability, such a finding by this court is inappropriate. Instead, the matter should be remanded to the Commissioner for a redetermination of Plaintiff's physical RFC and for further development of the record. At a minimum, the record should be further developed to include at least one opinion by an agency physician that is not based on any of the now-excluded medical records, and which opinion reflects Plaintiff's condition during all or most the relevant period. Alternatively (or in addition to obtaining the opinion of an agency physician), the Commissioner may obtain an opinion from Dr. Gaiser regarding Plaintiff's physical capacities during the relevant period. Lastly, because remand is necessary (on grounds other than those asserted by Plaintiff in the motion to stay or remand), and the court is now aware of the existence of additional, relevant, medical evidence that

is not part of the administrative record, the Commissioner should be directed to incorporate into the record the additional medical evidence. Specifically, the record should be modified to include the additional treatment records from Dr. Gaiser supplied by Plaintiff (Doc. 25, Attachs.), and further, the Commissioner should consider striking from the record Dr. Guttman's physical RFC assessment or otherwise indicating that the opinions therein are based in part on evidence that is no longer part of the record.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand the matter to an ALJ for further proceedings consistent with this Report and Recommendation, that judgment be entered in favor of plaintiff pursuant to sentence four of 42 U.S.C. § 405 (g), and that the clerk be directed to close the file.

2. Plaintiff's "Motion to Stay Proceedings or Remand Pursuant to Sentence Six" (Doc. 21) be **DENIED as moot**.

At Pensacola, Florida this 2nd day of July 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** See **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**